```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
OLGA SHAKOVA,                                                    :
                                                                 :
                                    Plaintiff,                   :
                                                                 :         24-cv-07763 (LJL)
                -v-                                              :
                                                                 :       MEMORANDUM AND
THOMAS A. CIOPPA,                                                :           ORDER
                                                                 :
                                    Defendant.                   :
-----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/29/2025

LEWIS J. LIMAN, United States District Judge:

Plaintiff Olga Sharkova ("Plaintiff") is a native and citizen of Russia. Dkt. No. 1 ¶ 18. She applied to the United States Citizenship and Immigration Services ("USCIS" or "Government") for asylum and withholding of removal on December 7, 2021. *Id.* ¶¶ 3, 19. USCIS has yet to schedule an interview or issue a decision in her case. *Id.* ¶ 3. On October 12, 2024, Plaintiff brought suit before this Court under the Administrative Procedure Act, 5 U.S.C. § 555(b), and the All Writs Act, 28 U.S.C. § 1361, seeking a writ of mandamus compelling USCIS to adjudicate her application for permanent residency without unreasonable delay. Dkt. No. 1.

USCIS now moves to dismiss the complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim for relief. Dkt. No. 11. The motion is opposed, Dkt. No. 15, and USCIS has filed a reply memorandum of law, Dkt. No. 16. For the reasons that follow, the motion is granted without prejudice.

## BACKGROUND

**I.     Regulatory Background**

The Immigration and Nationality Act of 1965 ("INA") generally entitles any noncitizen "who is physically present in the United States . . . irrespective of . . . status," to apply for

asylum. 8 U.S.C. § 1158(a)(1). The asylum applicant must meet the definition of a "refugee" by establishing that she either experienced past persecution or has a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *Id.* §§ 1101(a)(42)(A), 1158(b)(1)(B)(i); 8 C.F.R. § 208.13. The applicant also must establish that she warrants a favorable exercise of discretion. 8 U.S.C. § 1158(b)(1)(A).

The INA requires the Attorney General to establish a procedure for the consideration of asylum applications. *Id.* § 1158(d)(1). The statute dictates that "in the absence of exceptional circumstances, the initial interview or hearing on the asylum application shall commence not later than 45 days after the date an application is filed." *Id.* § 1158(d)(5)(A)(ii). It further requires that "in the absence of exceptional circumstances, final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed." *Id.* § 1158(d)(1)(A)(iii). These provisions are not judicially enforceable. Section 1158(d)(7), which is entitled "No private right of action," states: "Nothing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." *Id.* § 1158(d)(7).

A noncitizen may seek asylum either affirmatively before USCIS or defensively during removal proceedings in immigration court. *See* 8 C.F.R. §§ 208.2 (affirmative applications); 1208.2 (defensive applications). The affirmative application is first heard by an asylum officer who, by regulation, must have received "special training in international human rights law, nonadversarial interview techniques, and other relevant national and international refugee laws and principles." 8 C.F.R. § 208.1(b). As a general matter, an application for asylum must be filed within one year of the date of the applicant's arrival in the United States. *Id.* § 208.4(a)(2).

2

The asylum officer must conduct an interview of the applicant to obtain information bearing on the applicant's eligibility for asylum "in a nonadversarial manner and, except at the request of the applicant, separate and apart from the general public." *Id.* § 208.9(b). If the asylum officer is satisfied that the applicant qualifies as a refugee, she may grant the application for asylum in the exercise of her discretion. *Id.* § 208.14(b). If she denies or dismisses the application and determines that the applicant is inadmissible or deportable, the matter is referred to an immigration judge. *Id.* § 108.14(c).

As a general matter, except in the case of an applicant whose asylum application has already been recommended for approval, the applicant must wait until 150 days after the date on which a complete asylum application has been submitted to apply for employment authorization. *Id.* § 208.7(a). USCIS has 30 days from the date of the filing of a request for employment authorization to grant or deny that request. *Id.* § 208.7(a)(1).[1] In addition, an applicant who leaves the United States without first obtaining advance parole is deemed to have abandoned his or her application for asylum. *Id.* § 208.8(a). The regulations do not provide a timetable for when the interview must take place or when a decision must be rendered.

Since 2018, USCIS has adjudicated asylum applications on a "last-in-first-out" ("LIFO") basis, "schedul[ing] asylum interviews for recent applications ahead of older filings." *See* U.S. Citizenship and Immigration Services, USCIS to Take Action to Address Asylum Backlog, https://www.uscis.gov/archive/uscis-to-take-action-to-address-asylum-backlog; Dkt. No. 13 ¶ 31. USCIS prioritizes the scheduling of affirmative asylum interviews as follows: (1) first

---

[1] The request for employment authorization must be denied when the asylum officer has denied the asylum application. *Id.* However, as long as the application for asylum on form I-589 remains pending, employment authorization may be renewed in five-year increments. 8 C.F.R. § 208.7(b); USCIS Policy Manual Vol. 10, Pt. A, Ch. 4, § C(1), https://www.uscis.gov/policy-manual/volume-10-part-a-chapter-4 (current as of January 15, 2025).

applications that were scheduled for an interview, but the interview needed to be rescheduled at the applicant's request or because of the needs of USCIS; (2) then applications pending 21 days or fewer since filing; and (3) then all other pending applications, starting with newer filings and working back toward older filings. *Id.*; Dkt. No. 13 ¶ 24. It asserts that this approach "seeks to deter those who might try to use the existing backlog as a means to obtain employment authorization" and that the LIFO method allows "USCIS to identify frivolous, fraudulent or otherwise non-meritorious asylum claims earlier and place those individuals into removal proceedings." *Id.* USCIS also asserts that it currently assigns some of its Asylum Officers to complete affirmative asylum cases pending in the backlog, starting with the oldest cases and working forward. Dkt. No. 13 ¶ 31.[2]

## II.   Plaintiff's asylum application

Plaintiff is a native and citizen of Russia. Dkt. No. 1 ¶ 18. She was admitted to the United States on a B2 visa on June 28, 2021. Dkt. No. 12 ¶ 12; Dkt. No. 15 at 1. She filed an application for asylum and withholding of removal on Form I-589 on December 7, 2021. Dkt. No. 1 ¶¶ 3, 19; Dkt. No. 12 ¶ 13. The application is currently pending in the Newark Asylum Office. Dkt. No. 12. ¶ 13; Dkt. No. 15 at 2. No action has been taken on her asylum application. Dkt. No. 1 ¶¶ 20–21. Plaintiff alleges that almost three years have passed since her application was submitted and the Government has yet to schedule an interview or issue a decision in her

---

[2] The Court may take judicial notice of USCIS's stated procedure for adjudicating asylum applications, as reflected in its public website. *See Konde v. Raufer*, 2024 WL 2221227, at *1 (S.D.N.Y. May 16, 2024) (taking "judicial notice of facts not subject to reasonable dispute, including those related to USCIS's asylum adjudication procedures, as set forth in documents from the agency's official website" (citing *Kravitz v. Tavlarios*, 2021 WL 5365582, at *3 (2d Cir. Nov. 18, 2021))). Here, Plaintiff does not dispute that USCIS has been following this process or that the information about the process is cognizable on the motion to dismiss. Dkt. No. 15 at ECF 2.

case. *Id.* ¶ 3. She has made inquiries regarding the application and requested that it be adjudicated but has received only inadequate and uninformative responses. *Id.* ¶ 22.

The application indicates that Plaintiff is not married and has no children. Dkt. No. 12 ¶ 14. The Newark Asylum Office has no record of receiving an expedite request from Plaintiff. *Id.* ¶ 15.[3]

## PROCEDURAL HISTORY

Plaintiff filed her complaint on October 12, 2024, asserting claims under the Administrative Procedure Act ("APA") and the federal Mandamus Act. Dkt. No. 1. In summary, she seeks an order finding that the delay in adjudicating her asylum application has been unlawful and unreasonable and compelling Defendant to promptly adjudicate her application and/or schedule an interview within 30 days. Dkt. No. 1 at 6. She also seeks attorneys' fees and costs under the Equal Access to Justice Act. *Id.*

Defendant filed its motion to dismiss on February 12, 2025, along with a memorandum of law in support of the motion and the declarations of Mollie Isaacson and John L. Lafferty. Dkt. Nos. 11–14. On March 4, 2025, Plaintiff filed a memorandum of law in opposition to the motion to dismiss. Dkt. No. 15. On March 11, 2025, Defendant filed a reply memorandum of law in further support of the motion to dismiss. Dkt. No. 16.

---

[3] Defendant states that Plaintiff's Form I-589 is not among the newest or oldest pending at the Newark Asylum Office, Dkt. No. 12 ¶ 13, and that the Newark Asylum Office is processing her application in the normal course of business according to USCIS's established method of administering the affirmative asylum program, *id.* ¶ 16. The Court cannot take judicial notice of those assertions. *See Lyons v. United States Citizenship & Immigr. Servs.*, 2023 WL 144879, at *7 (S.D.N.Y. Jan. 10, 2023) ("At the pleadings stage, the Court cannot accept USCIS's representations to that effect as true. . . . [T]he Court currently lacks an evidentiary record showing that granting the requested relief would serve only to delay other applications equally deserving of consideration." (cleaned up)).

5

**LEGAL STANDARD**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. *Twombly*, 550 U.S. at 555, 557. The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

**DISCUSSION**

The Government argues that the complaint must be dismissed because (1) Plaintiff has not alleged facts sufficient for the Court to find that agency action was "unreasonably delayed" under the APA, Dkt. No. 14 at 16–22, and (2) Plaintiff does not have a clear right to relief and instead has an alternative remedy under the APA, defeating her claim under the All Writs Act, *id.* at 15–16. The Court takes each argument in turn.

I.  **Administrative Procedure Act**

The APA requires that, "within a reasonable time," an "agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). Where agency action is "unlawfully withheld or

6

unreasonably delayed," a reviewing court shall "compel" such action. *Id.* § 706(1). "There is 'no *per se* rule as to how long is too long' to wait for agency action, but a reasonable time for agency action is typically counted in weeks or months, not years." *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (quoting *In re Int'l Chem. Workers Union,* 958 F.2d 1144,1149 (D.C. Cir. 1992)). In assessing the reasonableness of an agency's delay in adjudicating a matter before it, courts in this Circuit rely upon the considerations set out by the D.C. Circuit in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"). *See Nat. Res. Def. Council v. FDA*, 710 F.3d 71, 84 (2d Cir. 2013); *see also* Dkt. No. 15 at 2 (Plaintiff agreeing that the reasonableness of delay is judged by the *TRAC* factors). The six factors of the *TRAC* standard are as follows:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (internal quotation marks and citations omitted).

"Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003). The Court's "role on a motion to dismiss is 'not determining whether there has been an unreasonable delay,'

7

but rather 'determining whether plaintiffs' complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay.'" *Kaur v. Mayorkas*, 2023 WL 4899083, at *5 (S.D.N.Y. Aug. 1, 2023) (quoting *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 50 (D.D.C. 2021)); *see also Sarlak v. Pompeo*, 2020 WL 3082018, at *5 (D.D.C. June 10, 2020); *Ghadami v. U.S. Dep't of Homeland Sec.*, 2020 WL 1308376, at *7 n.6 (D.D.C. Mar. 19, 2020).[4]

"The first and most important factor is that 'the time agencies take to make decisions must be governed by a 'rule of reason.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *TRAC*, 750 F.2d at 80)). The courts in this Circuit and elsewhere have found that the LIFO system followed by USCIS satisfies the rule of reason for purposes of the first *TRAC* factor. *See Cheng v. Garland*, 2024 WL 5009146, at *3 (S.D.N.Y. Dec. 6, 2024) (citing cases); *Htoo v. Mayorkas*, 2025 WL 315828, at *5 (S.D.N.Y. Jan. 28, 2025). Plaintiff does not argue to the contrary. Dkt. No. 15 at ECF 2. She argues only that the time period that she has been forced to endure "contradicts any rational 'rule of reason.'" *Id.* But the delay that Plaintiff has experienced in the adjudication of her application does not itself demonstrate that USCIS has not been following this process or that its delay is unreasonable. The delay is explicable. Other applicants may "be ahead of [her] in line." *Cohen v. Jaddou*, 2023 WL 2526105, at *4 (S.D.N.Y. Mar. 15, 2023) (internal citations and quotations omitted). While there may come a time when the delay has been too long to presume it is rational, courts in this District "generally found delays of four years or less not to be unreasonable." *Boussana v. Johnson*, 2015 WL 3651329, at *8 (S.D.N.Y. June 11, 2015); *see Cheng v. Garland*, 2024 WL 5009146, at *5 (S.D.N.Y. Dec. 6, 2024) (citing cases)).

---

[4] The Court notes that some courts have declined to apply the *TRAC* factors at the motion to dismiss stage. *See, e.g.*, *Thomas v. Pompeo*, 438 F. Supp.3d 35, 44 (D.DC. 2020); *Moghaddam v. Pompeo*, 424 F. Supp. 3d 104, 117 (D.D.C. 2020).

The second *TRAC* factor asks whether "Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute." *TRAC*, 750 F.2d at 80. Congress has done so here through Paragraph (5)'s 45-day deadline to commence "the initial interview or hearing on the asylum application." 8 U.S.C. § 1158(d)(5)(A)(ii). Moreover, under 8 U.S.C. § 1158(d)(5)(A)(iii), Congress has required that asylum applications be adjudicated within 180 days. These provisions do not create a private right of action. Still, they are "certainly an indication of what the legislature had in mind—after all, Congress had the option of saying nothing on the subject at all." *Uranga v. U.S. Citizenship & Immigr. Servs.*, 490 F. Supp. 3d 86, 103 (D.D.C. 2020). They weigh in favor of Plaintiff. Congress' language, however "does not automatically render the delay in this case unreasonable." *Kaur v. Mayorkas*, 2023 WL 4899083, at *9 (S.D.N.Y. Aug. 1, 2023) (quoting *Cohen*, 2023 WL 2526105, at *5).

"Courts analyze *TRAC* factors three and five together, looking to the possible effects a delay has had on a plaintiff's health and welfare and to the 'nature and extent of the interests prejudiced by delay.'" *Arabzada v. Donis*, 725 F. Supp. 3d 1, 16 (D.D.C. 2024) (quoting *TRAC*, 750 F.2d at 80). "[T]he analysis of the third and fifth *TRAC* factors requires careful consideration and weighing of the circumstances of a case." *Lyons*, 2023 WL 144879, at *8. Plaintiff alleges that until she "receives a decision on her application, she is unable to travel, work without restrictions, or petition for relatives" and "is not able to accrue time to be eligible for naturalization." Dkt. No. 1 ¶ 27. Each of those effects, however, is inherent to the process and to Plaintiff's status as an asylum applicant. *See Sheiner v. Mayorkas*, 2023 WL 2691580, at *9 (S.D.N.Y. Mar. 29, 2023). Plaintiff does not allege any facts particular to her case that demonstrate that the delay in adjudicating her application has had an impact on her health and

9

welfare.  *Compare with Lyons,* 2023 WL 144879, at *8–9 (plaintiff alleged adverse mental health impacts, impeded decisions relating to his life, family, and career, and a substantial financial investment at stake); *Saharia v. U.S. Citizenship & Immigr. Servs.*, 2022 WL 3141958, at *7 (S.D.N.Y. Aug. 5, 2022) (plaintiff alleged that delay in adjudicating his application for adjustment restricted his ability to move jobs or start his own company and left him, his wife, and his child with no option but to move back to India).[5]

The fourth *TRAC* factor requires courts to "consider the effect of expediting delayed action on agency activities of a higher or competing priority."  *TRAC*, 750 F.2d at 80.  The Government offers through the declaration of the Director of the Newark Asylum Office that "over 11,000 asylum applications at the Newark Asylum Office that are older than the Plaintiff's asylum application and are also awaiting an initial interview," Dkt. No. 12 ¶ 9, while the office has 100,000 total asylum applications pending, *id.* ¶ 7.  The declarant further asserts that the Newark office's resources have been necessarily diverted due to "mission-critical needs" related to the "surge of noncitizens arriving at the southwest border," *id.* ¶ 10, and to the congressional mandate to schedule certain Afghan noncitizens for interviews on an expedited timeline, *id.* ¶ 11.  With the exception of the fact of the prioritization of Afghan emigrees under the Extending Government Funding and Delivering Emergency Assistance Act, Pub. L. No. 117-43 § 2502, 135 Stat. 377 (Sept. 30, 2021), which the Government makes no effort to quantify, none of those facts related to the Newark office backlog is "apparent from the face of . . . the complaint" or

---

[5] The records of the USCIS indicate that Plaintiff filed an initial Form I-765 Application for Employment Authorization, on May 16, 2022, which USCIS approved on August 11, 2022.  Dkt. No. 12 ¶ 17.  Plaintiff's Employment Authorization Document ("EAD") was set to expire on August 8, 2024, but she applied to renew her EAD on February 23, 2024, which USCIS approved on March 27, 2024.  *Id.*  Her current EAD is valid until March 7, 2029, and she is eligible to renew her EAD in five-year increments for the entire pendency of her asylum application.  *Id.* ¶ 17.

from any materials of which the Court may take judicial notice, *Lyons*, 2023 WL 144879, at *7 (internal quotations omitted). It thus is not apparent "that a resolution of the unreasonable-delay claim in the plaintiff's favor would in fact permit the plaintiff to jump the line at the expense of others." *Id.* This factor is neutral.

The sixth factor asks whether there is evidence of impropriety, but *TRAC* makes clear that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'" 750 F.2d at 80. Plaintiff identifies no impropriety.

Weighing the six factors, the Court concludes that Plaintiff has not stated a claim for unreasonable delay based on her sparse complaint. She does not allege facts sufficient to call into question the rationality of the USCIS process or the fairness of its application to her. Nor does she allege facts to establish that she has suffered personally from that delay, beyond those harms that are experienced by all asylum applicants. And while the delay is significant relative to the congressional benchmarks for adjudication of asylum claims, the delay also is within the range that courts in this District have found reasonable and not suggestive of a defect in the asylum interview process.

"The dismissal, however, is without prejudice." *Kaur*, 2023 WL 4899083, at *13. Plaintiff's application will become stronger with each passing month that her petition remains pending and, even today, she may be able to allege facts calling into question the reasonableness of the agency's delay or the impact that it has had on her personally.

**II.    Mandamus Act**

The Mandamus Act provides: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United Sates or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. In order to obtain

11

mandamus relief, a plaintiff must prove: " (1) there is a clear right to relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available." *Benzman v. Whitman*, 523 F.3d 119, 133 (2d Cir. 2008) (citing *Anderson v. Bowen*, 881 F.2d 1, 5 (2d Cir. 1989)). "The common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984). "[T]he party seeking mandamus has 'the burden of showing that its right to issuance of the writ is 'clear and indisputable.'" *Will v. United States*, 389 U.S. 90, 96 (1967) (quoting *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 384 (1953)).

Though "[m]andamus jurisdiction is closely related to the merits of whether a writ of mandamus should issue," *Aydemir v. Garland*, 2022 WL 4085846, at *6 (S.D.N.Y. Sept. 6, 2022) (internal quotation marks omitted), the jurisdictional and merits analyses are not identical. Contrary to the Government's assertion, this Court is not deprived of subject matter jurisdiction to hear Plaintiff's mandamus claim by the fact that no private right of action is available under 8 U.S.C. § 1158(d)(7). *See De Oliveira v. Barr*, 2020 WL 1941231, at *2 (E.D.N.Y. Apr. 22, 2020) ("While defendants' argument that the timelines specified in § 1158(d) are not legally enforceable is persuasive, the preclusion of a private right of action does not oust the district court of its mandamus jurisdiction.").[6] In other parts of the Mandamus Act, Congress expressly

---

[6] Courts in this Circuit have differed as to "whether a failure to satisfy the elements of a mandamus claim under § 1361 warrants dismissal for lack of jurisdiction or for failure to state a claim." *City of New York v. U.S.P.S.*, 519 F. Supp. 3d 111, 127 n.9 (E.D.N.Y. 2021). The Court finds persuasive the well-reasoned opinions of Judge Rochon that the Government's argument that Plaintiff is not entitled to mandamus relief is best understood as directed to whether Plaintiff has stated a claim for relief rather than as to whether the Court has subject matter jurisdiction. *See Htoo v. Mayorkas*, 2025 WL 315828, at *3 (S.D.N.Y. Jan. 28, 2025); *Qi v. U.S. Citizenship*

specified that a court would lack jurisdiction to review a determination or finding.  *See, e.g.*, 8 U.S.C. § 1158(a)(3) ("No court shall have jurisdiction to review any determination of the Attorney General under paragraph (2)."). "[A]lthough § 1158(d)(7) expressly disclaims a private right of action to enforce deadlines as set forth in the statute, it does not specify, as in § 1158(a)(3), that a court would lack jurisdiction to review the processing of asylum applications." *De Oliveira*, 2020 WL 1941231, at *3.

However, "[t]he fact that a statute does not strip a district court of mandamus jurisdiction does not by any stretch mean that the statute conveys a right enforceable by mandamus." *Id.* at *4.  The express disclaimer of a private right of action under § 1158(d) undermines Plaintiff's claim to "a clear right" necessary to obtain relief because the statute explicitly states that applicants do not have a "substantive or procedural right or benefit" to have their applications adjudicated within the specified period.  8 U.S.C. § 1158(d)(7).  An asylum applicant does not have a right to sue "the United States or its agencies or officers or any other person" for failure to comply with the statute's provisions.  *Id*.

Further, Plaintiff fails to meet the statutory requirements for mandamus relief because she has available an alternative remedy under the APA.  *See Konde*, 2024 WL 2221227, at *5; *Xu*, 434 F. Supp. 3d at 56; *Liu*, 2020 WL 2836426, at *10; *cf. Cohen v. Jaddou*, 2023 WL 2526105, at *7 (S.D.N.Y. Mar. 15, 2023) (dismissing mandamus claim in an action where the plaintiff sought to compel adjudication of his green card application because an adequate remedy was

---

*& Immigr. Servs.*, 2024 WL 2262661, at *3-4 (S.D.N.Y. May 17, 2024); *but see Ying Yu Liu v. Wolf*, 2020 WL 2836426, at *10 (S.D.N.Y. May 30, 2020) (dismissing for lack of jurisdiction); *Fangfang Xu v. Cissna*, 434 F. Supp. 3d 43, 56–57 (S.D.N.Y. 2020) (same); *Konde*, 2024 WL 2221227, at *5 (same).

13

available under the APA and thus "mandamus relief [was] not available"). Plaintiff's mandamus claim is accordingly dismissed without prejudice.

## CONCLUSION

Defendant's motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure is GRANTED without prejudice to amend. If no amendment is filed by June 27, 2025, the Court will direct the Clerk of Court to close the case.

The Clerk of Court is respectfully directed to close Dkt. No. 11.

SO ORDERED.

Dated: May 29, 2025
New York, New York

_____
LEWIS J. LIMAN
United States District Judge